J-A28029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GREGORY LINGHAM, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| GLORIA FAISON, | |
| Appellee | No. 530 EDA 2016 |

Appeal from the Judgment Entered April 12, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 140903148

BEFORE:  PANELLA, SHOGAN, and PLATT,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JANUARY 11, 2017**

Appellant, Gregory Lingham ("Lingham"), appeals from the April 12, 2016 judgment entered on a jury verdict in favor of Gloria Faison ("Faison"). Lingham initiated the underlying personal injury/negligence action following an automobile accident in which Faison struck Lingham's vehicle. We affirm.

The trial court set forth the relevant facts and procedural history of this matter as follows:

> On October 4, 2012, [Lingham] was driving his car and stopped for a red light near the intersection of Diamond Street and Sedgley Street in Philadelphia, Pennsylvania. N.T. 10/26/15 at 60. While [Lingham] was waiting for the light to turn green, his vehicle was rear-ended by [Faison's] car, resulting in minor body damage to both cars. Id. at 60-62, 64-65, 103-104. [Faison] did not dispute that she hit [Lingham], but did claim

---

[*]  Retired Senior Judge assigned to the Superior Court.

that the stoplight was green and that [Lingham] had inexplicably stopped "in the road," rather than at the light itself, and that [Lingham's] brake lights were not illuminated. *See* id. at 98, 108. [Lingham] and [Faison] spoke briefly after the accident, and police officers arrived a short time later, but neither individual requested medical assistance. Id. at 63, 101-104, 113. Both parties then left the scene in their respective vehicles. N.T. 10/26/15 at 63, 104. [Lingham] then took care of a few family matters, and subsequently made his way to Lankenau Hospital's emergency room, where he was examined, given a prescription muscle relaxer for neck and back pain, and then discharged. Id. at 63-64.

Approximately one week after the accident, [Lingham] went to Progressive Rehab to start a physical therapy regimen that included heat applications, electric stimulation, lidocaine injections, and various exercises. N.T. 10/26/15 at 66-70; N.T. 10/27/15 at 48-49. Lingham received treatment at Progressive several times a week for roughly six months, but eventually stopped therapy due to his belief that this rehabilitation program was not working. N.T. 10/26/15 at 70. He then went to Pain Management & MRI facility on April 24, 2013, where he was seen by a doctor who recommended that Lingham should come back in four-to-six weeks for a follow-up visit and additional care. Id. at 70-72; N.T. 10/27/15 at 50-52. Despite this advice, Lingham never returned to Pain Management & MRI facility. N.T. 10/27/15 at 52-53. Lingham continued to take prescription painkillers, but failed to seek any further medical care for the next year and a half. N.T. 10/26/15 at 71-72; N.T. 10/27/15 at 53.

[Lingham] subsequently engaged the services of an attorney who filed suit against Faison on September 23, 2014. At [Lingham's] lawyer's recommendation, [Lingham] went to a medical facility in Oaks, Pennsylvania for additional treatment. N.T. 10/26/15 at 73.[3] In turn, the staff at this facility referred him to North American Spine and Pain Center where he was evaluated by Dr. Kieran Slevin. On November 24, 2014, in his

office, Dr. Slevin performed a rhizotomy[1] on portions of [Lingham's] cervical spine. Id. at 72-73, 75-78.

> [3] [Lingham] never provides a name for this facility in Oaks, Pa.

On October 26, 2015, this case proceeded to a jury trial that was presided over by this [c]ourt. Prior to trial beginning, Faison's attorney filed an oral motion-in-limine to preclude very limited portions of pre-trial videotaped trial testimony [of Lingham's] expert Dr. Vincent DiStefano, regarding the nature of rhizotomy procedures, as well as whether it was reasonable and necessary for Lingham to receive this procedure under the circumstances. Id. at 3-7. [Faison's] counsel argued that Dr. DiStefano did not hold a sufficient level of specialized knowledge regarding rhizotomies and was therefore not qualified to render an opinion regarding whether this procedure was reasonable or necessary. After oral argument, this [c]ourt determined that Dr. DiStefano had insufficient knowledge, experience, or expertise regarding the rhizotomy procedure and that [Lingham] was thereby precluded from present[ing] that very limited portion of Dr. DiStefano's videotaped trial deposition as to whether [Lingham's] rhizotomy procedure was reasonable and necessary under the circumstances. Id. at 4-5, 12-15.

The parties then presented their respective cases, and [the jurors] began their deliberations on October 27, 2015. The jury verdict found that while [Faison's] admitted negligence caused the accident, [Lingham] did not suffer a serious impairment of a bodily function. As a result of this finding, [Lingham] was not awarded any non-economic damages.[2] *See* N.T. 10/27/15 at 122-24; Trial Worksheet at 1.

---

[1] "[A] rhizotomy is a procedure where nerves along the spinal column are burned or severed, which prevents those nerves from transmitting sensory impulses to the brain. This can provide the recipient with pain relief in the areas of the body previously served by the operated-upon nerves." Trial Court Opinion, 4/13/16, at 2 n.2 (internal citations and quotation marks omitted).

[2] Lingham selected the limited tort option in his policy of automobile insurance. The trial court explained the ramifications of selecting limited

*(Footnote Continued Next Page)*

- 3 -

On November 4, 2015, [Lingham] filed his Post-Trial Motion arguing that this [c]ourt had improperly precluded the limited portion of Dr. DiStefano's video-taped testimony and that he should be given a new trial as a result. Post-Trial Motion at 2-8.

On November 5, 2015, this Court ordered both parties to submit supplemental briefs addressing this issue. Ceisler Order, 11/5/15 at 1. Finding [Lingham's] arguments to be completely unpersuasive, this [c]ourt denied [Lingham's] Post-Trial Motion via an order docketed on January 29, 2016. Ceisler Order, 1/27/16 at 1….

Trial Court Opinion, 4/13/16, at 2-4.

On April 12, 2016, Lingham filed his notice of appeal,[3] and both Lingham and the trial court complied with Pa.R.A.P. 1925. On appeal, Lingham presents the following issues for this Court's consideration:

_(Footnote Continued)_ ————————

tort, as opposed to the full tort insurance option, as follows: "a person who elects to purchase a car insurance policy that provides only limited tort coverage cannot recover non-economic damages under most circumstances, until he has suffered a 'serious injury' in [a] car accident due to another's negligence. 75 Pa.C.S. § 1705(d)." Trial Court Opinion, 4/13/16, at 1-2, n.1. "'Serious injury' is defined as 'a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement.' [75 Pa.C.S. §] 1702." *Id*. Because Lingham failed to prove to the jury that he suffered any serious bodily injury, the jury returned a verdict in favor of Faison. *Id*. at 1 (citing Jury Verdict-Civil Trial Worksheet, 10/27/15 at unnumbered 1).

[3] The record reflects that Lingham filed his notice of appeal on February 5, 2016, prior to the entry of judgment. However, Lingham filed a praecipe for the entry of judgment in favor of Faison, and judgment was entered on April 12, 2016. Accordingly, we shall address the merits of this appeal. ***See Johnston the Florist, Inc. v. TEDCO Const. Corp.***, 657 A.2d 511, 515 (Pa. Super. 1995) (holding that this Court was not required to quash the

_(Footnote Continued Next Page)_

- 4 -

1. Whether [t]he trial court abused its discretion and otherwise committed error of law when it precluded Dr. Vincent DiStefano from testifying regarding the reasonableness, necessity and relatedness of [Lingham's] surgical procedure.

2. Whether the trial court abused its discretion and otherwise committed error of law when it based its opinion for precluding Dr. DiStefano's testimony regarding the reasonableness, necessity and relatedness of [Lingham's] surgical procedure on Dr. DiStefano's testimony stating he does not know what the standard of care is for a pain management doctor.

3. Whether the trial court abused its discretion and otherwise committed error of law when it precluded Dr. Vincent DiStefano from testifying regarding the reasonableness, necessity and relatedness of [Lingham's] surgical procedure when [Faison] never filed a Motion in Limine stating her grounds for precluding that testimony.

Lingham's Brief at 6.[4]

In Lingham's first two issues, he alleges the trial court erred in ruling that Dr. DiStefano was not qualified to testify as an expert concerning whether the rhizotomy Lingham underwent was reasonable, necessary, and related to the motor vehicle accident. We review such a challenge bearing in mind the following principles:

> In order to qualify as an expert witness in a given field, a witness normally need only possess more expertise than is within the ordinary range of training, knowledge, intelligence, or experience. ***Miller v. Brass Rail Tavern, Inc.***, 541 Pa. 474, 481, 664 A.2d 525, 528 (1995). Thus, ordinarily, the test to be applied when qualifying an expert witness is whether the witness

*(Footnote Continued)* ─────────────

appeal and could address the merits of an appellant's claims where judgment was entered after the notice of appeal was filed).

[4] We have renumbered Lingham's issues for purposes of our discussion.

has **any** reasonable pretension to specialized knowledge on the subject under investigation. ***Id***. at 480, 664 A.2d at 528 (emphasis original).

***Freed v. Geisinger Medical Center***, 971 A.2d 1202, 1206 (Pa. 2009).

Moreover, our Rules of Evidence provide as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702. Ultimately, the determination as to whether a witness is qualified to testify as an expert is left to the discretion of the trial court.

***Wexler v. Hecht***, 847 A.2d 95, 98 (Pa. Super. 2004).

Here, the trial court addressed Lingham's challenge to its ruling on Dr. DiStefano's testimony as follows:

[Lingham's] challenge to this [c]ourt's limited preclusion of Dr. DiStefano's testimony fails for two reasons. First, [Lingham] has failed to offer *any* explanation as to *how* he was prejudiced by this ruling. *See* Post-Trial Motion at 5. The jury heard ample evidence regarding the fact that [Lingham] did in fact undergo a rhizotomy procedure—that was never in dispute. The jury heard and saw ample evidence regarding the nature and extent of his injuries[5] and thus had a more than sufficient evidentiary basis for evaluating the severity of his injuries. Whether the rhizotomy was reasonable or necessary was irrelevant. The fact is that

[Lingham] underwent the procedure, the jury heard all about it, and could consider this evidence in determining whether he sustained a serious injury.

> [5] This evidence included a video presented by [Faison] which showed [Lingham] actually preaching at a Baptist church in December 2013 with impressive physical vigor and animation, despite his claim of serious physical impairment due to the October 2012 accident. *See* N.T. 10/27/15 at 62-66.

Second, the evidence clearly indicated that Dr. DiStefano possessed nothing more than a vague understanding of the rhizotomy procedure, and was completely unequipped to provide the jury with competent, accurate expert testimony regarding the putative reasonableness and necessity of Lingham's November 24, 2014 surgery. Dr. DiStefano has never performed a rhizotomy procedure, and his only "experience" with the procedure was watching someone else perform it nearly five decades ago. DiStefano Deposition at 10, 35. In fact, Dr. DiStefano has not done a single cervical spine operation during the entirety of his professional career. Id. at 10. Moreover, by his own words, Dr. DiStefano expressly stated that he did not know what kind of medicine Dr. Slevin specialized in, nor did he know what the standard of care was for this procedure. Id. at 55-56.[6] In sum, the videotaped deposition of Dr. DiStefano revealed that he had no real familiarity with rhizotomies, was unable to provide an appropriate explanation regarding why Dr. Slevin performed this procedure upon [Lingham], or whether that decision was medically justifiable under the circumstances. Accordingly, this [c]ourt properly precluded the portions of Dr. DiStefano's videotaped deposition in which he opined about the reasonableness and necessity of [Lingham's] rhizotomy surgery.

> [6] **Ms. Samuels:** "In this situation, Mr. Lingham, without a medical recommendation went to Dr. Slevin, without medical records, without MRI films. Dr. Slevin spoke to him, examined him and performed a surgical procedure on him that same day. Is that the normal standard of care?"
>
> **Dr. DiStefano:** "It's not the standard of care in the areas where I practice. I can't speak for Dr. Slevin."

Trial Court Opinion, 4/13/16, at 6-7 (one footnote omitted) (emphases in original).

Here, Dr. DiStefano was not precluded from testifying; rather, Dr. DiStefano was precluded from testifying as an expert regarding rhizotomies. As the trial court stated, Dr. DiStefano was unable to illustrate any particularized knowledge of the rhizotomy procedure, he could not identify the standard of care, and his only familiarity with rhizotomies came from observing the procedure performed by a physician nearly fifty years ago. Under the standards discussed above, we discern no abuse of discretion in the trial court precluding Dr. DiStefano from testifying as an expert with respect to rhizotomies.

Finally, in Lingham's third issue, he argues that the trial court erred when it precluded Dr. DiStefano from testifying because Faison's counsel did not file a written motion *in limine*, but instead made the motion orally. However, we are constrained to conclude that Lingham waived this claim of error because he did not raise it in his post-trial motion. **See L.B. Foster Co. v. Lane Enterprises, Inc.**, 710 A.2d 54 (Pa. 1998) (stating "Pa.R.Civ.P. 227.1 requires parties to file post-trial motions in order to preserve issues for appeal. If an issue has not been raised in a post-trial motion, it is waived for appeal purposes.").

Assuming, *arguendo*, that Lingham had properly raised this claim in a post-trial motion, we would deem the issue waived due to Lingham's failure

to present any argument on this issue in his appellate brief. **See Jones v. Jones**, 878 A.2d 86, 90 (Pa. Super. 2005) (stating that a failure to argue an issue and cite authority supporting the argument constitutes a waiver of that issue on appeal).

For the reasons stated above, we conclude that Lingham is entitled to no relief. Accordingly, we affirm the judgment entered in favor of Faison.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/11/2017